IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Angela Romagosa Fernandez | ) | |
| | ) | |
| Plaintiff, | ) | C. A. No. 1:21-cv-01606-MN |
| v. | ) | |
| | ) | |
| Trafigura Trading, LLC | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY IN SUPPORT OF MOTION TO SUBSTITUTE PLAINTIFF**

Suzette Nicole Neyra Hendrick, as Temporary Administrator of the Estate of Angela Romagosa ("Hendrick"), through undersigned counsel, files this reply in support of her motion to substitute Hendrick for the recently deceased Plaintiff, Angela Romagosa Fernandez, and in support states:

**INTRODUCTION**

1. Hendrick filed a Rule 25(a) motion (D.I. 17, the "Motion") to substitute herself as plaintiff in this Helms-Burton Act ("HBA") case due to the death of plaintiff Angela Romagosa Fernandez. The sole issue for the Court to decide is whether plaintiff's HBA claim was extinguished upon her death. *See* Fed.R.Civ.P. 25(a); see also *Soto v. Booking.Com B.V.*, 2021 WL 7710484, at *2 (S.D. Fla. Sept. 29, 2021) (finding HBA claims do not extinguish upon death). In the Motion, Hendrick identified the Rule 25(a) legal standard – whether the HBA claim is remedial or penal in nature – and showed that the claim is remedial and therefore was not extinguished. *See* Motion at 3-7. In response, Defendant raises various Rule 12(b)(6) arguments for dismissal of the underlying claim, which are not relevant on a motion for substitution and should be raised in Defendant's motion to dismiss following Hendrick's substitution. Next, Defendant argues the HBA is penal in nature, but Defendant fails to address or distinguish the only

existing authority that exhaustively analyzed the issue and concluded otherwise, mentioning it only in a footnote as authority that Defendant "respectfully disagrees with."

## ARGUMENT

### I. Defendant's Rule 12(b)(6) Arguments are Improper and Should be Raised in a Motion to Dismiss

2. Defendant claims that Hendrick cannot state a claim under the Helms-Burton Act because (1) she untimely "acquired" a claim to confiscated property, and (2) the Complaint lacks certain allegations about nationality. D.I. 19 ("AB") at 5-8. These are Rule 12(b)(6) arguments that must be raised by separate motion after Hendrick is substituted as plaintiff so she may appropriately respond to them in her capacity as substituted plaintiff. Until Hendrick is substituted, there is no party with capacity to respond on behalf of the plaintiff. Defendant's attempt to shoehorn arguments to dismiss the underlying complaint into an answering brief on a motion for substitution deprives Hendrick of an adequate opportunity to respond in her own answering brief. As briefly shown below, Hendrick can and will show precisely how Defendant's two Rule 12(b)(6) arguments fail after Hendrick is substituted and the parties can fully brief the arguments in Rule 12(b) motion practice.

#### A. Defendant Cannot Convert Its Answering Brief into a Motion to Dismiss

3. The consideration for the Court on a Rule 25(a) motion to substitute "is whether the claim is extinguished." *Giles v. Campbell*, 698 F.3d 153, 155–56 (3d Cir. 2012). After determining a claim is not extinguished, the Court's inquiry should end and the motion to substitute should "be freely granted." *Cuoco v. Palisades Collection, LLC*, 2014 WL 956229, at *3 (D.N.J. Mar. 11, 2014) (citing *In re Baycol Prods. Litig.*, 616 F.3d 778, 783 (8th Cir. 2010) (citing the 1963 Advisory Committee notes)). "[I]t is difficult to imagine a case" where a court would "deny

a motion to substitute for a deceased plaintiff made within the rule's time limits." *Id*. (citing *Saylor v. Bastedo*, 623 F.2d 230, 237 (2d Cir. 1980)).

4.  Contrary to Third Circuit precedent and without any authority, Defendant adds a new Rule 25(a) standard, claiming it can raise Rule 12(b) arguments in opposition because the Court "can also deny a motion to substitute if permitting substitution would be futile." AB at 5. However, there is no "futility" standard for a Rule 25(a) motion because the substitution does not change the relationship between the parties, the procedural posture of the case, or the substantive law, nor does it amend the pleadings. Rather, the substituted party "steps into the same position as the original party [and] there is ***a continuance of the original action***." *United States v. Miller Bros. Const. Co.*, 505 F.2d 1031, 1036 (10th Cir. 1974) (emphasis added); *see also Hilao v. Est. of Marcos*, 103 F.3d 762, 766 (9th Cir. 1996) (same); *Cuoco v. Palisades Collection, LLC*, 2014 WL 956229, at *5 (D.N.J. Mar. 11, 2014) (same). For example, both subject matter jurisdiction and personal jurisdiction are tested based on the original parties and "once it validly exists among the original parties, [it] remains intact after substitution." *Ransom v. Brennan*, 437 F.2d 513, 516 (5th Cir. 1971) (citing *Hardenbergh v. Ray*, 151 U.S. 112, 113 (1893) ("When the original suit was brought . . . the court acquired jurisdiction of the controversy, and ***no subsequent change of the parties could affect that jurisdiction***.") (emphasis added)).

5.  Defendant supports its assertion of a new "futility" standard by citing two cases that are not relevant and do not support its proposition. The first case granted a Rule 12(b)(6) motion to dismiss with prejudice because amendment would be futile and ***then*** denied a pending motion to substitute "as moot" given the dismissal. *Hurst v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 426018, at *18 (D. Del. Feb. 9, 2012). The second case – decided under a different rule governing substitutions after a party assigns its claim– denied a motion to substitute because the

claim was not assignable. *Armstrong v. MGC Mortg., Inc.*, 2010 WL 4292405, at *2 (N.D. W.Va. Oct. 22, 2010). Neither of these cases creates a new futility standard permitting defendants to broadly convert every Rule 25(a) motion for substitution into a Rule 12(b) motion to dismiss. Moreover, as a procedural matter, the Court has not yet granted the motion for substitution. There is currently no party with capacity to respond on behalf of the Plaintiff to Defendant's Rule 12(b) arguments. Assuming the Court agrees with the well-reasoned, extensive analysis of the only existing precedent on the survivability of HBA claims (*Soto*, 2021 WL 7710484, at *2), the Court should substitute Hendrick as the proper plaintiff, permit Defendant to file its motion to dismiss, and then allow Hendrick to appropriately respond in her capacity as substituted plaintiff. *See Lacambra v. City of Orange*, 2019 WL 13036258, at *2 (C.D. Cal. June 20, 2019) ("To the extent Defendants argue that there are no factual allegations to support individual capacity claims against Defendants Smith and Shiomoto, these arguments should be raised in a motion to dismiss—not a motion for party substitution.").

        **B.**      **As Substituted Plaintiff, Hendrick Will Show Defendant's Arguments Fail**

6.      Defendant makes two Rule 12(b) arguments, and both misstate the law. First, Defendant misunderstands the "acquisition" provision of the HBA, leading it to cite over a dozen cases that have no application here. The HBA provides: "In the case of property confiscated before March 12, 1996, a United States national ***may not bring an action*** under this section on a claim to the confiscated property unless such national acquires ownership of the claim before March 12, 1996." 22 U.S.C. § 6082(a)(4) (emphasis added). As the Third Circuit instructs, "the phrase 'bring a civil action' as used in a federal statute means 'to commence' such an action." *Redmond v. ACE Am. Ins. Co.*, 614 F. App'x 77, 80 (3d Cir. 2015) (citations omitted). Plaintiff already brought this

action in compliance with the HBA and Hendrick, as the substituted plaintiff, will simply continue the action already brought.

7. Defendant argues Hendrick cannot bring an HBA action as personal representative of the estate because the Plaintiff's estate just recently acquired ownership of the claim, which is after March 12, 1996. AB at 5-8. But this action has already been commenced, and the action was already brought by a U.S. national who timely acquired her claim, thus satisfying the HBA requirement found in 22 U.S.C. § 6082(a)(4). In boldly (and incorrectly) proclaiming that this would be the "first court" to ever allow a plaintiff to proceed with a "late acquisition" of an HBA claim, Defendant overlooks the plain language of the HBA and cites a series of cases brought by (that is, commenced by) plaintiffs who allegedly did not timely acquire their claims. This case was brought by (that is, commenced by) a plaintiff who timely acquired her claim. For that reason, every case Defendant cites is inapplicable and the plain language of the HBA controls. There are also numerous other grounds to oppose Defendant's mistaken "acquisition" argument and, after she is substituted as plaintiff, Hendrick should be given the opportunity to properly and fully brief them in her capacity as plaintiff standing in the shoes of the decedent.

8. Defendant's second Rule 12(b)(6) argument is even more ill-suited for consideration on a Rule 25(a) motion for substitution. Defendant claims the Complaint lacks certain allegations regarding the nationality of Plaintiff's ancestors. AB at 8. Like its acquisition argument, this also relies on a misreading of the HBA. Recently, a Judge in the Southern District of Florida misread the HBA in *Regueiro v. Am. Airlines*, 2022 WL 2399748 (S.D. Fla. May 20, 2022). In its brief, one-paragraph argument (AB at 8), Defendant's Answering Brief cites only the *Regueiro* decision in support of its position and makes no argument that the decision is based on

the actual text or legislative history of the HBA – and for good reason – because the text of the HBA and the legislative history say exactly the opposite.

9.  As Hendrick will demonstrate more completely in response to a Rule 12(b) motion once she has the legal capacity to do so, the HBA expressly permits federal district courts to refer questions in cases before them to the Foreign Claims Settlement Commission (the "FCSC") in certain circumstances "whether or not the United States national qualified as a national of the United States … at the time of the [confiscation]." *See* 22 U.S.C. § 6083(b) (amending the International Claims Settlement Act of 1949 to permit referral to the FCSC of claims where the claimant was not a U.S. citizen at the time of confiscation).[1]

## II. The HBA is Remedial in Nature and Defendant Neglects to Address the Overwhelming Authority in Support

10.  Defendant fails to rebut (or even address much of) the clear and unambiguous Congressional intent, binding Supreme Court and Third Circuit precedents, and the only authority directly ruling on the survivability of HBA claims, all of which plainly show the HBA is remedial and not penal in nature.

---

[1] The legislative history – including congressional reports and hearings, letters, debates, and related publications – is filled with direct statements that the HBA was intended to permit recovery for confiscations even where the victims were Cuban nationals at the time their property was taken, if the Cuban victims became U.S. nationals before March 12, 1996. *See, e.g.*, H.R. Rep. No. 104-202 (1995), at 40 (U.S. nationals include those "***naturalized after***" confiscation) (emphasis added); *id*. at 55 (remedy available "***regardless of when [the plaintiff] became U.S. citizen***" assuming citizenship before March 12, 1996) (emphasis added); see also 141 Cong. Rec. 25925, 25929, 27515, 27521-22, 27723-24, 27733, 27756, 27758, 28064 (1995); *see also* Att'y Gen. Order No. 2029-96, Dep't of Justice, Summary of the Provisions of Title III of the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996, 61 Fed. Reg. 24955, 24955 (May 17, 1996) ("Title III of the Act discourages foreign investment in properties that were expropriated . . . from persons ***who are now United States nationals***.") (emphasis added).

### A. Congress Intended the HBA to be Remedial, Not Penal

11. Hendrick's primary argument showing the HBA is remedial and not penal relies on Third Circuit precedent that instructs courts to look for any indication of a remedial congressional intent and end the inquiry. Doc. No. 17 at 3-4 (citing *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 110 (3d Cir. 2017) and *Harrow v. Prudential Ins. Co.*, 279 F.3d 244, 248 (3d Cir. 2002)). For example, in *Harrow*, the Third Circuit summarily concluded that "Congress intended ERISA to be remedial" by simply citing the statutory language that "the policy of this chapter [is] to protect . . . the interests of participants in employee benefit plans." *Harrow*, 279 F.3d at 248 (citing 29 U.S.C. § 1001(b). The HBA similarly states its purpose is to provide a judicial remedy to "United States nationals who were the victims of these confiscations." 22 U.S.C. § 6081(11). Defendant ignores the substance of these Third Circuit cases and instead attempts to distinguish them because they interpreted the Fair Housing Act and ERISA, not the HBA. AB at 9-10. That is non-responsive and fails to distinguish the Third Circuit standard for which Hendrick cited the precedent.

12. Moreover, Hendrick cites multiple Supreme Court cases directly on point holding that the title of a statutory section makes it "quite clear" whether Congress intended to impose a civil or penal remedy. *United States v. Ward*, 448 U.S. 242, 249 (1980); *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998). Defendant ignores these Supreme Court cases entirely because, as Defendant knows, the title of the relevant HBA statutory section is: "***Civil remedy***." 28 U.S.C. § 6082(a) (emphasis added); *see United States v. Est. of Schoenfeld*, 344 F. Supp. 3d 1354, 1370 (M.D. Fla. 2018) (citing *Ward* to conclude that a statute titled "Civil Penalties" was remedial and therefore survived the plaintiff's death).

13. Ignoring the applicable Third Circuit and Supreme Court precedent, Defendant argues Congress intended the HBA to be penal because "Title III's primary goal is to deter certain behavior in and engagement with Cuba." AB at 10. This argument fails for two reasons. **First**, deterrence is not an exclusively penal policy goal, and courts routinely find statutes with the goal of deterrence to be remedial in nature. *See, e.g., EEOC v. Coughlin, Inc.*, 2022 WL 1568529, at *7 (D. Vt. May 18, 2022) (finding the Vermont Fair Employment Practices Act was remedial in nature and survived the party's death based, in part, on its purpose "to deter and eradicate discrimination") (citations omitted); *Hansen v. Auto-Owners Ins. Co.*, 2010 WL 749820, at *2 (D. Colo. Mar. 4, 2010) ("The CCPA is a remedial statute intended to deter and punish deceptive trade practices committed by business in dealing with the public.") (citations omitted). **Second**, the legislative history Defendant relies on to argue deterrence was a policy goal directly refutes its claim that the HBA is punitive and not remedial. As Defendant cites:

> The purpose of ***this civil remedy*** is, in part, to discourage persons and companies from engaging in commercial transactions involving confiscated property . . . .

AB at 11 (citing H.R. Rep. No. 104-468, 58 (1996) (Conf. Rep.), reprinted in 1996 U.S.C.C.A.N. 558, 573) (emphasis added). As the Third Circuit recognizes, and the Supreme Court affirmed, a "civil remedy" is "remedial in nature." *United States v. Doman*, 255 F.2d 865, 868 (3d Cir. 1958), *aff'd sub nom. Koller v. United States*, 359 U.S. 309 (1959).

### B. Defendant Fails to Distinguish *Soto*

14. Although the Third Circuit simply looks to any indication of a remedial Congressional intent to determine whether a claim survives the death of a party (*see* II.A., *supra*), courts in other Circuits have applied a three-factor test, including the only court to have opined on whether an HBA claim is remedial or penal in nature. *Soto*, 2021 WL 7710484, at *2. Although it is the only authority directly on point, Defendant chooses not to address the findings in *Soto*,

8

identifying it only in a footnote as a case that "is not binding here and Defendant respectfully disagrees with its analysis." AB at 11 n.3.

15.  The first factor is whether the purpose of the HBA is to redress individual wrongs or more general wrongs to the public. *U.S. v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993). Defendant does not credibly dispute the express statutory language that the HBA provides a judicial remedy to "United States nationals who were victims of these confiscations," not the general public. 22 U.S.C. § 6081(11). Instead, Defendant digs out a statement from Rep. Ros-Lehtinen about penalizing foreign investors and cites a footnote buried in a 1996 journal article quoting a proponent of the law (not a lawmaker) as saying that he supports the law in order "to drive foreigners out of Cuba." AB at 12. This is not sufficient authority to override the express terms of the statute, nor the numerous cases Hendrick cites holding that the HBA redresses individual wrongs. *See* Motion at 5-6.

16.  The second factor is whether recovery under the HBA runs only to the plaintiff or to the public. *NEC Corp.*, 11 F.3d at 137. Defendant concedes "damages under Title III are paid to the claim holder." AB at 12. This factor easily weighs in favor of the remedial nature of the HBA, as Defendant admits and the *Soto* court also concluded. *Soto*, 2021 WL 7710484, at *2.

17.  The third factor is whether the remedy is disproportionate to the harm. As the *Soto* court found and Defendant failed to distinguish: "Damages intended to make whole an individual whose property has been confiscated can hardly be said to be disproportionate to the harm suffered." *Id*. Defendant argues the damages are disproportionate because they are based on the value of the confiscated property, not the Defendant's actual use or benefit from the confiscated property. AB at 12. This argument ignores Congress's express findings in the HBA that one purpose of the Act was to create remedies "for unjust enrichment from the use of the wrongfully

confiscated property . . . at the expense of the rightful owners of the property" and that victims should be given a remedy that "would deny traffickers any profits from economically exploiting Castro's wrongful seizures." 22 U.S.C. § 6081(8), (11).  By exploiting the value of the confiscated property, traffickers in that property make it far less likely, and more likely impossible, for claimants to recover the value of the confiscated property.  Accordingly, the damage calculation in the HBA – which relies on either a certified claim, special master report, or an estimate of fair market value – is designed to make the damages proportionate to the harm suffered.

18. Defendant also briefly argues that damages must be disproportionate because there is no statutory mechanism to "apportion liability among traffickers or limit a plaintiff from recovering the value of its property multiple times over." AB at 13.  But statutes typically do not apportion liability or expressly prohibit double recoveries as defendants are free to raise a prohibition against double recoveries as a defense.  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002).

19. In its final two sentences, Defendant claims that the availability of treble damages indicates the HBA is penal and not remedial, but neglects to address any of the seven cases Hendrick discusses at length showing that treble damages are "designed primarily as a remedy" and do not convert a remedial statute into a penal one.  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 486 (1977); *see also* Motion at 6-7.

## CONCLUSION

For the foregoing reasons, Hendrick submits that an HBA claim is remedial in nature and therefore survives the death of the plaintiff.  Accordingly, Hendrick respectfully requests the Court grant her Motion to Substitute Plaintiff.

| | |
|---|---|
| Dated:  July 22, 2022 | CROSS & SIMON, LLC |
| | |
| | */s/ Michael L. Vild* |
| | Michael L. Vild (No. 3042) |
| | 1105 N. Market Street |
| | Suite 901 |
| | Wilmington, Delaware 19801 |
| | Tel:  (302) 777-4200 |
| | mvild@crosslaw.com |
| | |
| | *Counsel for Plaintiff* |

*OF COUNSEL*

BERLINER CORCORAN & ROWE LLP
David A. Baron
Melvin White
Laina C. Lopez
1101 17th Street, N.W., Suite 1100
Washington, D.C. 20036-4798
Tel:  (202) 293-5555
Facsimile:  (202) 293-9035
dbaron@bcr-dc.com
mwhite@bcr-dc.com
llopez@bcr-dc.com


FIELDS PLLC
Richard W. Fields
Martin F. Cunniff
Edward Han
1701 Pennsylvania Ave, N.W., Suite 200
Washington, D.C. 20006
Tel: (833) 382-9816
fields@fieldslawpllc.com
MartinCunniff@fieldslawpllc.com
edhan@fieldslawpllc.com