IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANGELA ROMAGOSA FERNANDEZ,<br><br>Plaintiff,<br><br>v.<br><br>TRAFIGURA TRADING, LLC,<br><br>Defendant. | Civil Action No. 21-1606-GBW |

## MEMORANDUM ORDER

Pending before the Court is Suzette Nicole Neyra Hendrick's, as Temporary Administrator of the Estate of Angela Romagosa Fernandez ("Hendrick"), Motion to Substitute Hendrick (the "Motion") for the recently deceased Plaintiff Angela Romagosa Fernandez ("Ms. Fernandez" or "Plaintiff"). D.I. 17. The Court has considered the parties' briefing. D.I. 17, D.I. 19, D.I. 20. For the reasons explained below, the Court grants the Motion.

### I.   BACKGROUND

On November 12, 2021, Ms. Fernandez alleged that Defendant Trafigura Trading, LLC ("TTL") had trafficked in confiscated property without authorization in violation of Title III of the Cuban Liberty and Democratic Solidarity Act of 1996, codified at 22 U.S.C. § 6021, *et seq.* (the "Helms-Burton Act" or "Act"). *See generally* D.I. 1. On March 16, 2022, Ms. Fernandez's counsel filed a Suggestion of Death, notifying the Court and TTL that Ms. Fernandez had passed away on February 16, 2022. D.I. 11. The Court subsequently entered an Oral Order requesting "decedent's successor or representative" to "file a motion for substitution" within 90 days or risk dismissal of this suit pursuant to Federal Rule of Civil Procedure 25(a). D.I. 14. On May 3, 2022, TTL filed a Motion for a Stay of Proceedings until the issue of decedent Plaintiff's substitution is

1

resolved by the Court. D.I. 15. On May 15, 2022, the Court granted the motion and stayed "[a]ll proceedings in this action other than those under Federal Rule of Civil Procedure 25 . . . . pending the Court's resolution of any Rule 25 Motion for Substitution." D.I. 16. On June 14, 2022, Hendriks filed the Motion. D.I. 17.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 25(a)(1) sets forth the procedures for substitution after the death of a party. It provides, in relevant part, "[i]f a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative." Fed. R. Civ. P. 25(a)(1). The Advisory Committee on the 1963 amendments to Federal Rule of Civil Procedure 25 noted that "[a] motion to substitute made within the prescribed time will ordinarily be granted, but under the permissive language of the first sentence of the amended rule ('the court may order') it may be denied by the court in the exercise of a sound discretion if made long after the death . . . and circumstances have arisen rendering it unfair to allow substitution." Rule 25(a) should be construed liberally "to allow flexibility in substitution of parties." *Boggs v. Dravo Corp.*, 532 F.2d 897, 900 (3d Cir. 1976) (citing *Rende v. Kay*, 415 F.2d 983, 986 (1969)).

"When a party to a lawsuit dies, the threshold consideration pursuant to Rule 25(a)(1) is whether the claim is extinguished." *Giles v. Campbell*, 698 F.3d 153, 155–56 (3d Cir. 2012). If a claim is extinguished upon the death of a party, then the case should be dismissed. *Ex parte Schreiber*, 110 U.S. 76, 80 (1884). Whether a claim is "extinguished" upon the death of a party is determined by "the nature of the cause of action for which the suit is brought." *Id.* If the cause of action is federally created, then federal law governs survivability. *See, e.g., Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 248 (3d Cir. 2002); *Sinito v. U.S. Dept. of Justice*, 176

2

F.3d 512, 513 (D.C. Cir. 1999); *U.S. v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993); *Smith v. Dept. of Human Servs., State of Okla.*, 876 F.2d 832, 834 (10th Cir. 1989); *Mallick v. Int'l Bhd. of Elec. Workers*, 814 F.2d 674, 676–77 (D.C. Cir. 1987); *James v. Home Const. Co. of Mobile, Inc.*, 621 F.2d 727, 729 (5th Cir. 1980); *see also* 6 MOORE'S FEDERAL PRACTICE – CIVIL § 25.11(3) (2021).

Federal common law applies if the statute is silent regarding whether the action survives the death of a party. *Schreiber*, 110 U.S. at 80. "It is well-settled that [under federal common law] remedial actions survive the death of the plaintiff, while penal actions do not." *NEC*, 11 F.3d at 137; *see also Harrow*, 279 F.3d at 248 (finding ERISA action remedial in nature and, therefore, survived death of party); *James*, 621 F.2d at 729–30 ("Traditionally, the rule has been that actions for penalties do not survive the death of the plaintiff.") (citation omitted). "A remedial action is one that compensates an individual for specific harm suffered, while a penal action imposes damages upon the defendant for a general wrong to the public." *NEC*, 11 F.3d at 137 (citation omitted).

To determine whether a statute is remedial or penal, the Third Circuit looks at Congress' intent when enacting the statute. *See, e.g., Revock v. Cowpet Bay W. Condo Ass'n*, 853 F.3d 96, 109–10 (3d Cir. 2017); *Harrow*, 279 F.3d at 248. Other Circuits have adopted a three-prong test to make this determination:

> (1) whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public; (2) whether recovery under the statute runs to the harmed individual or to the public; and (3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered.

*NEC*, 11 F.3d at 137 (citing *In re Wood*, 643 F.2d 188, 191 (5th Cir. 1980)); *see also James*, 621 at 730; *Dept. of Human Servs.*, 876 F.2d at 835.

3

### III. DISCUSSION

For the reasons explained below, the Court finds the claims brought under the Helms-Burton Act are not extinguished upon the death of a party because the Act is remedial in nature. Thus, Hendrick's Motion is granted.

#### a. Whether the Purpose of the Helms-Burton Act was to Redress Individual Wrongs or More General Wrongs to the Public

The Helms-Burton Act is silent regarding whether a claim is extinguished after the death of a party. Thus, the Court must apply federal common law and determine whether the Act is remedial or penal. *See Schreiber*, 110 U.S. at 80; *Harrow*, 279 F.3d at 248. The first part of the three-prong test overlaps significantly with the Third Circuit's analysis of determining Congress' intent. The Court combines its analysis here. For the reasons stated below, the Court finds that this factor weighs in favor of finding the Act remedial.

TTL argues that the Act is penal because its primary goal "is to deter certain behavior in and engagement with Cuba." D.I. 19 at 10; *see also id.* at 12. The Court agrees that the Act's purpose was, in part, deterrent, but the language of the Act and the legislative history indicates that the primary purpose of the Act is remedial. First and foremost, the Act provides redress to "United States nationals who were the victims of these confiscations." 25 U.S.C. § 6081(11); *see also id.* § 6022(6) ("[T]he purposes of this [Act] are . . . to protect United States nationals against confiscatory takings and the wrongful trafficking in property confiscated by the Castro regime.").

To the Court's knowledge there is only one court to have ruled on the issue of whether the Helms-Burton Act is remedial or penal in nature and whether claims brought under the Act survive the death of a party. *See Soto v. Booking.Com B.V.,* No. 20-24044, 2021 WL 7710484 (S.D. Fla. Sept. 29, 2021). In *Soto*, the court granted the Plaintiff's motion to substitute a party, because it

4

found the Helms-Burton Act remedial in nature. *Id.* at *2. The Court finds the *Soto* opinion persuasive.

Under Title III, the Act lists "findings" made by Congress that are instructive to determine the purpose of the Act. 22 U.S.C. § 6081. It notes that since Fidel Castro seized power in Cuba in 1959, "he has trampled on the fundamental rights of the Cuban people" and has confiscated property from his own citizens, United States nationals, and "thousands more Cubans who claimed asylum in the United States as refugees because of persecution and later became naturalized citizens of the United States." *Id.* § 6081(3). The Act further notes that the international judicial system "lacks fully effective remedies for the wrongful confiscation of property and for unjust enrichment from the use of wrongfully confiscated property by governments and private entities at the expense of the rightful owners of the property." *Id.* § 6081(8). The "findings" section ends with the following:

> The United States Government has an obligation to its citizens to provide protection against wrongful confiscations by foreign nations and their citizens, including the provision of private remedies. [] To deter trafficking in wrongfully confiscated property, United States nationals who were the victims of these confiscations should be endowed with a judicial remedy in the courts of the United States that would deny traffickers any profits from economically exploiting Castro's wrongful seizures.

*Id.* § 6081(10), (11).

The "findings" section suggests that the Act was intended to redress individual wrongs.

Additionally, the heading of § 6082, which sets out the elements of a Helms-Burton Act claim, is titled "Civil remedy." *Id.* § 6082(a). This one fact alone is not dispositive that the Act is remedial, but "heading[s] of a section are 'tools available for the resolution of doubt' about the meaning of a statute." *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 891 (3d Cir. 2020) (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998)). A "civil remedy"

5

is "remedial in nature." *United States v. Doman*, 255 F.2d 865, 868 (3d Cir. 1958), *aff'd sub nom. Koller v. United* States, 359 U.S. 309 (1959). The legislative history also states that the Act is a civil remedy:

> The purpose of this *civil remedy* is, in part, to discourage persons and companies from engaging in commercial transactions involving confiscated property, and in so doing to deny the Cuban regime . . . the capital generated by such ventures and to deter the exploitation of property confiscated from U.S. nationals.

H.R. Rep. No. 104-468, 58 (1996) (Conf. Rep.), reprinted in 1996 U.S.C.C.A.N. 558, 573 (emphasis added).

The Court acknowledges that the legislative history also states that the Act would "deter the exploitation of property confiscated from U.S. nationals." *Id.* As observed by the court in *Soto*, "[w]hile it is true that the right of action provided by the Act will inevitably serve as a deterrent, its primary purpose is to provide redress for individuals who would otherwise have no other avenue for redress." *Soto*, 2021 WL 7710484, at *2.

Other courts, when interpreting the same provisions in Title III of the Helms-Burton Act, have also described Title III as creating "a new statutory remedy." *Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251, 1255 (11th Cir. 2006) (footnote omitted); *see also Havana Docks Corp. v. Carnival Corp.*, No. 19-21724, 2020 WL 5517590, at *8 (S.D. Fla. Sept. 14, 2020) ("Plaintiff seeks only to vindicate its own property rights in this action".).

Title III of the Helms-Burton Act created a private cause of action for United States nationals in United States courts against individuals or corporations that "traffic" in property expropriated from the Cuban government. *See* 22 U.S.C. § 6081. The purpose and plain language of the Act suggest it was intended to redress individual wrongs, i.e., harms done to United States nationals whose property was wrongly confiscated, not more general wrongs to the public. For the above reasons, this factor weighs in favor of a determination that the Act is remedial.

6

### b. Whether Recovery Under the Statute Runs to the Harmed Individual or to the Public

Recovery under the Helms-Burton Act runs to the harmed individual and, thus, weighs in favor of a remedial determination. Section 6082(a)(1)(A) recites, in relevant part, "any person that . . . traffics in property which was confiscated by the Cuban Government . . . . shall be liable to any United States national who owns the claim to such property for money damages . . . ." Money damages are paid to the *claimant*. The court in *Soto* similarly held, "[t]his factor [] weighs in favor of a remedial determination," because "[a]n award of damages under the Act goes to the claimant, not the public." 2021 WL 7710484, at *2.

### c. Whether the Recovery Authorized by the Statute is Wholly Disproportionate to the Harm Suffered

The recovery authorized by the Helms-Burton Act is not wholly disproportionate to the harm suffered. Thus, this factor weighs in favor of a remedial determination.

The money damages awarded to a claimant under the Helms-Burton Act are the greater of (1) the amount certified by Foreign Claims Settlement Commission plus interest, (2) the amount determined by a court-appointed special master plus interest, and (3) "the fair market value of that property, calculated as being either the current value of the property, or the value of the property when confiscated plus interest, whichever is greater." 22 U.S.C. § 6082(a)(1)(A)(i), § 6083(a)(2). In other words, the Helms-Burton Act seeks to provide a remedy— money damages equal in value to the confiscated property—to a claimant, whose property has been wrongfully confiscated. *See id.* § 6081(8) (stating one of the purposes of the Act is to create remedies "for the wrongful confiscation of property and for unjust enrichment from the use of wrongfully confiscated property by governments and private entities at the expense of the rightful owners of the property"). The *Soto* court similarly found, "[d]amages intended to make whole an individual whose property has

7

been confiscated can hardly be said to be disproportionate to the harm suffered." 2021 WL 7710484, at *2.

TTL argues that the law allows for treble damages, *see* 22 U.S.C. § 6082(a)(3)(C), which indicates that the Act is penal, not remedial. D.I. 19 at 13–14. The Supreme Court, however, has found that treble-damages provisions can have a remedial role. *See e.g., Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 240–41 (1987) (noting the "remedial function" of the "RICO treble-damages provision."); *see also Malvino v. Delluniversita*, 840 F.3d 223, 230 (5th Cir. 2016) ("The Supreme Court has repeatedly acknowledged that the treble-damages provision contained in RICO itself is remedial in nature." (internal quotations and citations omitted)). This Court recognizes that treble damages may serve as a means of both deterring wrongdoing and compensating claimants. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 485 (1977) ("treble damages [] play an important role in penalizing wrongdoers and deterring wrongdoing . . . It nevertheless is true that the treble-damages provision, which makes awards available only to injured parties, and measures the awards by a multiple of the injury actually proved, is designed primarily as a remedy.").

"Even were the trebling portion of [the Helms-Burton Act] considered to be penal in nature, this one factor cannot transform [the Helms-Burton Act] into a penal statute. To find otherwise would be to treat this one fact as dispositive thereby nullifying all the other indications that the statute is remedial." *See Hooters of Augusta, Inc. v. Am. Glob. Ins. Co.*, 272 F. Supp. 2d 1365, 1376 (S.D. Ga. July 23, 2003), *aff'd*, 157 F. App'x 201 (11th Cir. 2005).

For the above reasons, the Court concludes that the Helms-Burton Act is primarily remedial with incidental penal effects.


#### d. TTL's Improper 12(b)(6) Arguments

In TTL's Opposition Brief to Hendrik's Motion, TTL raises several arguments not relevant to a motion for substitution. *See* D.I. 19 at 5–8. Rather, these arguments are relevant to a motion to dismiss for failure to state a claim under Rule 12(b)(6). Specifically, TLL argues that Hendrick cannot bring a cause of action under Title III of the Helms-Burton Act because (1) she untimely "acquired" the confiscated property, and (2) the cause of action does not trace to a United States national from which property was confiscated. *Id.* TTL's attempts to shoehorn arguments relevant to a motion to dismiss into its response to a motion for substitution is improper.

TTL states in its "Legal Standard" section that "[c]ourts can also deny a motion to substitute if permitting substitution would be futile." D.I. 19 at 5. TTL cites to two cases that it alleges supports its proposition: (1) *Hurst v. State Farm Mut. Auto. Ins. Co.*, No. 10-1001-GMS, 2012 WL 426018 (D. Del. Feb. 9, 2012) and (2) *Armstrong v. MGC Mortg. Inc.*, No. 1:09CV131, 2010 WL 4292405 (N.D.W. Va. Oct. 22, 2010). In *Hurst*, the court denied the motions to substitute as moot because the court granted the motions to dismiss and found that amendment "would be futile." *Hurst*, 2012 WL 426018, at *1. In *Armstrong*, the court denied the motion to substitute because the claims were not assignable. *Armstrong*, 2010 WL 4292405, at *3. Neither of these cases support TTL's proposition that there is a futility standard when determining a motion for substitution. To the extent TTL argues that there are no factual allegations to support a cause of action under the Helms-Burton Act, "these arguments should be raised in a motion to dismiss— not a motion for party substitution." *See Lacambra v. City of Orange*, No. 8:18-cv-00960-RGK-KES, 2019 WL 13036258, at *2 (C.D. Cal. June 20, 2019) (ruling on a motion for party substitution filed pursuant to Rule 25(d)).

In fact, the Court noted in its Order granting TTL's Motion for a Stay of Proceedings that, "[i]n the event that the Court determines that substitution of the Plaintiff is appropriate, TTL shall

9

have 60 days from the later of (i) the date of substitution or (ii) the date on which the substituted Plaintiff files any amended complaint as may be authorized by the Court in connection with the substitution, to respond to the operative complaint in place at that time." D.I. 16 at 1–2. Thus, TTL will have an opportunity to raise its arguments for dismissal.

Therefore, at Wilmington this 14th day of November 2022, **IT IS HEREBY ORDERED** that the Motion is **GRANTED**. **IT IS ALSO HEREBY ORDERED** that, because the Court has resolved the Rule 25 Motion for Substitution, the stay is lifted. *See* D.I. 16. TTL shall have 60 days from the later of (i) the date of substitution or (ii) the date on which the substituted Plaintiff files any amended complaint, as may be authorized by the Court in connection with the substitution, to respond to the operative complaint in place at that time.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE